# ENOS P. TUCKER ET AL., RESPONDENTS, *v.* WILLIAM JONES, APPELLANT.

WATER RIGHTS — *Possessory title sufficient for appropriation of water — Abandonment — Deed — Appurtenances defined.* — In 1866, David Jones and two other men, Pierce and Durham, settled upon two tracts of unsurveyed land, and by means of a ditch dug from a creek near by, jointly appropriated and conveyed a certain amount of water upon the lands for the purpose of irrigation. The two tracts of land were partially in the same enclosure; and Pierce and Durham held one of them in common, which they cultivated and irrigated by means of the said water. In 1868 and 1870 Pierce and Durham conveyed their tract to the plaintiff, Enos Tucker, who in 1885, conveyed an interest therein to his co-plaintiff, Mary Tucker. In 1877, David Jones conveyed his tract to one Rowe, who in 1878 conveyed it to the defendant. The deeds under which the parties to this suit acquired title to the two tracts contained no specific reference to the water right aforesaid, other than the word "appurtenances." At two periods, between 1868 and 1876, Enos Tucker was absent from his tract for eighteen months at a time; but no adverse rights intervened during his absences, and he was uninterruptedly in possession of the same, and used the water right in connection therewith, until this suit arose. The trial court decided that the possessory title of Pierce and Durham to one of the tracts aforesaid was sufficient to authorize the appropriation of water for the purpose of irrigating the same, and that by reason of the fact that they held their tract in common, they acquired a one-half interest in the said ditch and water right, at the time the former was constructed and the latter appropriated; and that there was no abandoment by Enos Tucker of his tract, or interest in the water right, because no adverse rights had arisen during his absences from the same. *Held*, that the decision of the trial court on the points aforesaid was correct. *Held, also*, that the rule of law is, that where a conveyance of a house or farm is made, everything necessary to its use and enjoyment passes, save what is expressly reserved; and where by destination a right of way of drainage or water right attaches, it will pass in a deed to the property even without the use of the word "appurtenances" therein; *and* that when Pierce and Durham conveyed their tract of land to Enos Tucker with its appurtenances, they conveyed their interest in the ditch and water right at the same time, as fully as if the deed had described them. (*Donnell* v. *Humphreys*, 1 Mont. 518, cited.)

EVIDENCE — *Judgment — Res inter alios acta.* — The defendant claimed the water right in dispute by virtue of a decree in his favor as to the same, in a suit against one Kirkpatrick, to which plaintiffs were not parties. *Held*, that such a decree could not avail the defendant as against plaintiffs.

APPEAL — *Exceptions to evidence.* — *Held*, that exceptions to the introduction of evidence cannot be considered, unless the grounds of objection are stated therein in accordance with sections 291 and 292, division 1, Compiled Statutes.

| | |
|---|---|
| 8 | 225 |
| 9 | 43 |
| 11 | 29 |

| | |
|---|---|
| 8 | 225 |
| 15 | 148 |
| 15 | 316 |
| 15 | 576 |
| 19* | 571 |
| 38* | 675 |
| 39* | 83 |
| 39*1058 |

| | |
|---|---|
| 8 | 225 |
| 18 | 438 |
| 19 | 76 |
| 19 | 84 |

| | |
|---|---|
| 8 | 225 |
| 21 | 503 |

| | |
|---|---|
| 8 | 225 |
| 23 | 68 |

| | |
|---|---|
| 8 | 225 |
| 31 | 82 |
| 32 | 67 |
| 32 | 550 |

*Appeal from the District Court, Beaverhead County.*

### STATEMENT.

This was an action brought by the plaintiffs for the purpose of determining by a decree of court that they were the owners of, and entitled to a two-thirds interest in a certain irrigating ditch and water right, of which the defendant claimed the exclusive ownership. The case was tried without a jury, and resulted in a decree that the plaintiffs were entitled to a one-half interest in the property aforesaid. Defendant appealed.

*Robert B. Smith,* and *Thomas L. Napton,* for Appellant.

The court presumed title in plaintiffs instead of presuming it in defendant by actual possession. (Rev. Stats. p. 66, § 32.) No title could be acquired by virtue of a contract, not performed, where the *performance* is necessary to initiate title. The burden of proving title was on the plaintiffs, the defendant being in possession. The deeds from Pierce and Durham, which were received in evidence by the court over the objection of defendant's attorneys, do not purport to convey any ditches or water rights to the plaintiffs, or either of them, and their being admitted in evidence was clearly error. The title to the land was not in plaintiffs' grantors, and it was not a possessory title such as is recognized by our territorial statute, and there was no *possessio pedis;* and even if the conveyance could take effect upon any land, it could not convey the legal title to a water ditch that was not shown to be an appurtenance to even the attempted showing of a possessory title of an indefinite tract of land; land not fenced or cultivated. Could the court find as a fact that they conveyed a legal title to a ditch they owned as an appurtenance to land they did not own, possess, or cultivate, and so far as the evidence shows, was not subjected to the use of the water from the ditch? We think not. The evidence clearly shows the above state of facts. Land cannot be an appurtenance to land, nor can a possessory title to a ditch be an appurtenance to no title to land, and their deeds do not call for ditches or water rights. (*Green* v. *Collins,* 86 N. Y. 246; 40 Am. Rep. 531; *Riddle* v. *Littlefield,* 53 N. H. 507, 508; 16 Am. Rep. 388; *Harris* v. *Elliott,* 10 Peters, 25; 1 American

and English Encyclopedia of Law, title, Appurtenances; *Farmer* v. *Ukiah Water Co.* 56 Cal. 11.)

*Thomas J. Galbraith*, for Respondents.

That there was a contract between Jones and Pierce and Durham, the predecessors in interest of the defendant and of the plaintiffs, as to the original appropriation of this water and the construction of this ditch, is established by the testimony. The evidence shows that Pierce and Durham "took up" or "squatted" upon some three hundred and twenty acres of the public domain, unsurveyed in the year 1866, fenced it, built a house upon it, lived there and raised crops, and irrigated these crops with water taken out of *this ditch*. As to rights acquired under such possessory claims, see *Lamb* v. *Davenport*, 18 Wall. 307; *Houseman* v. *Chase*, 12 Cal. 290; *Rich* v. *Maples*, 33 Cal. 102; *Kelly* v. *Mack*, 49 Cal. 523. As to appurtenances, see Angell on Water Courses, §§ 153, 358; *Cave* v. *Crafts*, 53 Cal. 135.

LIDDELL, J.—This is a contest between the plaintiffs and defendant over the use of a certain irrigating ditch and water right; and in the decision of the cause we are very much assisted by the opinion of the chief justice, who tried the case in the court below. We deduce the following facts from a confused mass of conflicting testimony found in the record: During the year 1866, David Jones and two other men, named Pierce and Durham, settled in the same neighborhood, on adjoining parcels of land, in what is now Beaverhead County, and appropriated the waters of Rattle Snake Creek, by digging a ditch to convey the waters on their lands. David Jones, in 1877, sold his land to one William Rowe, who in the year following transferred it to the present defendant, with all of its appurtenances; while the rights in the lands taken up by Pierce and Durham were sold and conveyed in 1868 and 1876 to Enos P. Tucker, who, in 1885, sold a part thereof to Mary Tucker, his co-plaintiff in the present suit. Pierce and Durham used the waters conveyed by the ditch, and ever since 1876 the present plaintiff, Enos Tucker, has used the water, as owner, for the purpose of irrigating his land, until July, 1887, when he was interfered with by the defendant, who claimed for the first time that he

was the sole owner of the water right and ditch, which was known in the neighborhood as the "Tucker" or "Tucker and Jones" ditch. Much conflicting evidence was introduced, as well as hearsay testimony; but, after a careful review, we agree with the judge of the lower court that the preponderance of the evidence is entirely in favor of the plaintiffs' rights to a half interest in the ditch and water right in dispute, for the reason that Pierce and Durham held their lands in indivision at the time of the appropriation and construction of the ditch, in 1866. Neither David Jones, nor Pierce nor Durham was sworn in the case to show how or when the ditch was constructed and water appropriated, or as to the interests of the parties thereto; and we here remark that the various deeds offered in evidence shed no light upon the point, for none of them refer to the ditch or water right, unless it be included in the term "appurtenances," to be found in all the conveyances. The defendant having claimed the entire ditch and water, the plaintiffs instituted the present suit to have their respective rights adjusted, and to enjoin the former from interfering with them in the use and enjoyment of the same. From a judgment in their favor, decreeing them to be entitled to a half interest in the ditch and water right, the defendant prosecutes this appeal.

In the decision of the cause we deem it entirely useless to recapitulate the conflicting testimony upon the questions of who constructed the ditch, the interest of the parties therein, and whether or not the plaintiffs used the waters of the ditch as owners, or by the sufferance and permission of the defendant, for the eleven years prior to the institution of this suit. It can serve no good purpose whatever to encumber this opinion with such detail. After finding that Enos Tucker has possessed and used an interest in the water and ditch as owner for eleven years, it seems hardly necessary to examine into the character of the possession of the land by Pierce and Durham, who sold to the plaintiff Tucker. But quoting from the opinion of the chief justice in the case: "The statute provides that the appropriation must be for some useful and beneficial purpose, and when the appropriator ceases to use the water, the right ceases; but questions of abandonment shall be questions of fact, and shall be determined as other questions of fact. (Comp. Stats.

§ 1251.) Now, if they had no land, or legal possession of the land, they had nothing for which they could appropriate the water. So, if Pierce and Durham did not have any possessory rights or interest in these public lands, they could not make any lawful appropriation, and an attempt to do so would be nugatory. It then becomes a vital question of fact to determine the character of their possession; and upon this point there is some conflicting evidence. It seems, however, that the 'David Jones and Pierce ranches' were both under the same enclosure, and without any division fences, with the ditch in dispute running clear through them. This, however, was before any surveys were made. The possession of Pierce and Durham was at least of an equal dignity with that of the defendant's grantors. They fenced, cleared, cultivated, and built upon the land, and had a clear right to make an appropriation of the waters of Rattle Snake Creek for the purpose of cultivating these lands. By purchase, the plaintiff, Enos Tucker, acquired whatever possessory rights, with the improvements thereon, Pierce and Durham had to the lands. We conclude that the point made by the defendant, that Pierce and Durham had no such interest in the land as would entitle them to make an appropriation of the waters of Rattle Snake Creek, is not well taken." It appears from the evidence that the plaintiff, Enos Tucker, was absent from his land between 1868 and 1876 as much as eighteen months, at one time, in Deer Lodge County, where he was sick, and at another time he was absent in Nevada for about the same period, on account of injuries received, from which it is contended that he had abandoned his rights to the ditch and water. Upon this question of abandonment the opinion to which we have before referred says: "When a person acquires possession of a part of the public domain, he has a right thereto, as against every other person, except the government; but this possessory right is susceptible of abandonment. If the party goes off and abandons his possessions, gives them up, relinquishes them, then the lands so occupied become a part of the public domain, and are subject to entry and occupancy by any new-comer, the same as if they had never been originally appropriated. Now, if some one had entered upon the lands in the absence of Tucker, the question of the abandonment would become a very serious one; but there is

no such controversy. Suppose that he did abandon them, and for the purposes of this argument we will concede that he did; but upon his return he finds them in the possession of no one, and again enters upon, and proceeds to occupy, develop, and improve the lands. If a stranger, during Tucker's absence, could acquire a right to the lands by occupancy, there is no reason why the first appropriator may not re-occupy and re-appropriate the same lands, in the absence of any adverse possession. The appropriation of water, it would seem, stands upon the same footing and basis as the possessory right of land. So, when a party abandons his water right, and ceases to use it for some beneficial purpose, it does not become the property of his joint tenant by virtue of such abandonment, but reverts to the government, and is thereafter subject to re-appropriation, just as much as abandoned land. If a stranger can appropriate this land, and gain the benefit of the labor of the original appropriator, why may not the latter return, re-appropriate, and acquire all of his original rights? It seems to me that it is not a debatable question." Continuing, he says: "There is no proof whatever to show that, if the plaintiff ever abandoned his water right, it was appropriated by any one else, or that the defendant, Jones, ever occupied it adversely. On the contrary, the record establishes that when the plaintiff returned to his lands, in 1876, he began using the water as owner, and did so without objection from the defendant or any one else; for there was nobody there to object, as David Jones left the country in 1875, and Rowe, the grantor of defendant, did not purchase of David Jones until 1877. In fine, Tucker resumed the enjoyment of his interest in the water right in 1876, and continued its use uninterruptedly, without let or hindrance, for a period of eleven years, prior to the interference of the defendant, in 1887; during which time he exercised all acts of dominion and ownership over the property, by keeping the ditch in repair, and erecting gates and dams to facilitate the control and flow of the water. Abandonment is a mixed question of intent and act; and I do not think that mere non-user, without intent to relinquish, constitutes abandonment." If it were necessary to decide the question of abandonment, we would hold with the trial judge that the evidence fails to establish any such charge.

We next come to inquire whether the interest of Pierce and Durham in the ditch and right to the use of the waters of Rattle Snake Creek were conveyed in the deeds to the lands from those persons to the plaintiff, Enos Tucker; and in this connection it will be remembered that in a former part of this opinion, it was stated that no express grant or sale of a ditch or water right was contained in the deeds, unless it was in the use of the word "appurtenances." The question is not a new one, and has been repeatedly passed upon by the courts, particularly in the case of *Cave* v. *Crafts*, 53 Cal. 135, and the authorities there cited. Indeed, it is a rule, in accordance with natural justice and reason, that, where one sells a house or a farm, every right will pass to the purchaser which is necessary to the complete use and enjoyment of the property conveyed, unless expressly reserved. Easements or servitudes are either personal or real, as, for instance, when a right of way is granted in favor of a particular person or persons, the sale of the estate will not carry with it the right which is confined to the persons; but where, by destination a right of way attaches to and in favor of a certain house, farm, ranch, or plantation, or a certain right of drainage exists in favor of the farm, or the use of a certain ditch and water for the irrigating of a farm, they will pass by the deed, even without the use of the word "appurtenances"; for the acquisition of the easement or servitude was intended for the benefit of the estate, and by destination is to be considered as incidental to the use of and as a part and parcel of the realty. As was well said in the case of *Cave* v. *Crafts, supra:* "The word 'appurtenances' is not necessary to the conveyance of the easement. The general rule of law is, that where a party grants a thing, he by implication grants whatever is incident to it, and necessary to its beneficial enjoyment. The incident goes with the principal thing. The idea and definition of an easement to real estate granted is, a privilege off and beyond the local boundaries of the lands conveyed." (See, also, *Donnell* v. *Humphreys*, 1 Mont. 530, and authorities there cited.) The grant of a mill carries with it the use of the water by which it is worked, the flood-gates, dams, and all things necessary to its use. (See authorities cited in above case on page 531.) So when Pierce and Durham conveyed their possession of the

land, with its appurtenances, they also conveyed their interest in the ditch and water right, which was necessary to the cultivation, use, and enjoyment of the land, just as certainly and as fully as if they had described it in express terms in the deed itself.

The contention of the defendant, that by virtue of a decree of the District Court, for the June term, 1887, in the case of *Jones* v. *Kirkpatrick*, he was right in refusing to allow the plaintiffs the use of any of the water in dispute, can hardly be treated as serious; for confessedly the present plaintiffs were in no way connected with, or parties to that litigation, and consequently are not bound by the judgment rendered therein. As we do not consider the point seriously insisted on, we therefore dismiss it from consideration with this statement.

In our conclusions we agree with the district judge, that Pierce and Durham owned a half interest in the ditch and water appropriated out of Rattle Snake Creek; that the appropriation was for the beneficial purpose of irrigating the lands they possessed; that when they conveyed their possessory rights to the land with its appurtenances to Tucker, they also sold and transferred to him all of their right, title, and interest in the ditch and water right; that no one acquired any adverse interests during Tucker's temporary absence; that he used his interest in the ditch and water, as owner, uninterruptedly, for eleven years prior to the present litigation; and with his co-plaintiff is entitled to be protected in the use and enjoyment of a half interest in the ditch and water right in dispute.

During the trial the defendant reserved several bills of exception to the reception of evidence; but, upon examination, we fail to find any reasons stated for the objections in any of the bills. In order to reserve a bill of exceptions to the introduction of evidence, the grounds of objection must be specifically stated in order to comply with the law. (Code Civ. Proc. §§ 291, 292.) It is not sufficient to object to the reception of evidence, without stating the reasons. (*Herman* v. *Jeffries*, 4 Mont. 522.) Judgment affirmed at appellant's cost.

*Judgment affirmed.*

DE WOLFE, J., and BACH, J., concur.