HOMES DEVELOPMENT COMPANY, INC. et al., Respondents v. SIMMONS et al., Appellants

(70 N. W.2d 527)

(File No. 9477. Opinion filed June 4, 1955)

**H. F. Fellows,** Rapid City, **Penfold & Overpeck,** Belle Fourche, for Plaintiffs and Respondents.

**Charles R. Hayes,** Deadwood, **Smiley & Clark,** Belle Fourche, for Defendants and Appellants.

SEACAT, Circuit Judge. The plaintiffs commenced this action to quiet the title to their real estate and to eliminate and close an irrigation ditch which runs through and over their property. The trial court rendered judgment for plaintiffs, and the defendants have appealed. The evidence is undisputed.

The property of the plaintiffs consists of certain lots located in subdivisions of the city of Belle Fourche, South Dakota; and all of the property described in the plaintiffs' complaint, with the exception of block 4 of Zukemont Addition No. 1 to the city of Belle Fourche, is located in the northeast quarter of the northwest quarter of section 14, township 8, north, range 2 , east of the Black Hills Meridian, and block 4 of Zukemont Addition No. 1 to the city of Belle Fourche belonging to the plaintiff, Homes Development Company, Inc., is located in the west half of the northwest quarter of section 14, same township and range.

The property of the defendants, Laurence and Irma G. Weyler, consists of all that part of the northwest quarter of the northwest quarter of section 14, township 8, north, range 2, east of the Black Hills Meridian, lying west of Ninth Avenue in the city of Belle Fourche, and the Simmons heirs are the owners of the southwest quarter of the northwest quarter of section 14, and other property located in section 15, same township and range, lying immediately west of said southwest quarter of the northwest quarter of section 14.

The irrigation ditch in question runs diagonally down through the property of the plaintiff Larrabee, then through the Frick property, then through the Newell, Stephens, Davis, and Homes Development Company properties, and on to the property of the defendants located in the west half of the northwest quarter of section 14, the southeast quarter of the northeast quarter, and the northeast quarter of the southeast quarter of section 15, same township and range.

At the trial and in open court the parties entered into the following stipulation, subject to plaintiffs' objection that the same was immaterial and incompetent for any purpose:

"* * * that the ditch across the land involved in the complaint was constructed during the year 1900. * * * that the Defendants and their predecessors in interest have used and enjoyed the right to use the ditch right of way for the purposes of irrigating the area now owned by these defendants and has pleaded in the answer since * * * 1900, that the Plaintiffs and each of them heretofore acquired their respective properties as alleged in the complaint with full knowledge of the existence of the ditch right of way, together with the size and location thereof, as well as the use to which the ditch was then being put and have had full knowledge of the use of this ditch right of way since the acquisition of their respective properties. * * * that the Defendants and their predecessors in interest used the ditch from the time of its construction to the present time for the purpose of carrying water for irrigation and that the Plaintiffs at the time they acquired the property to which they seek to quiet title knew of the physical presence of a said ditch and of its use. * * * That subsequent to the acquisition of the premises alleged to be held and now owned by the Plaintiff, Homes Development Co., the course of the ditch was changed by said company and re-established in a different channel * * * more agreeable to the Plaintiff. * * * as shown by the dotted line on Exhibit 2,"

It appears from the exhibits introduced in evidence that after the ditch was constructed and in use for irrigation purposes on the land in question, and between 1904 and 1905, Mrs. Anna Durst acquired by deeds the property in the northwest quarter of section 14, township 8, north, range 2, east of the Black Hills Meridian, through which this irrigation ditch runs, together with this irrigation ditch and the water rights and the right of way thereof, and to all ditches, flumes, dikes, dams, and conduits connected therewith; and that the plaintiffs and the defendants obtained their respective properties through a chain of title from said Anna Durst. However, at least most of the conveyances in the chains of title contain no reference to any irrigation ditch or water right.

Plaintiffs' right to use the water which flows through this ditch on to their property is not questioned. The defendants contend that they have the right to maintain this ditch on plaintiffs' property by virtue of the conveyances to them from Anna Durst, that the stipulation of facts and the evidence disclose they have a right to maintain this ditch as an easement by prescription, and further, that under the facts as disclosed by the record, the plaintiffs are estopped to challenge defendants' right to maintain and use the ditch for irrigation purposes. On the other hand, the plaintiffs claim, and the trial court found, that the defendants' use of this ditch for irrigation purposes was and is permissive only.

The ditch in question is a right of way, a means of conveying this water for irrigation and domestic purposes to the lands of the defendants; and a right of way is an easement. SDC 51.0601, South Dakota Code of 1939.

Assuming that the conveyances in the chains of title from Anna Durst to the plaintiffs and defendants for their respective properties contain no specific reference to this ditch, does the ditch or the right to maintain this ditch, under the facts disclosed by the record, still exist as an incident to the land of the defendants or as an easement or servitude on the land of the plaintiffs for the benefit of the defendants?

SDC 51.0105, 51.1313, and 51.1413, which have been in force in this state since territorial days, provide:

"51.0105   Appurtenances: general; mining.   A thing is deemed to be incidental or appurtenant to land when it is by right used with the land for its benefit, as in the case of a way or water course, or of a passage for light, air, or heat, from or across the land of another.   * * *

\*           \*           \*           \*           \*

"51.1313   * * *   The transfer of a thing transfers also all its incidents unless expressly excepted; but the transfer of an incident to a thing does not transfer the thing itself.   * * *

\*           \*           \*           \*           \*

"51.1413   * * *   A transfer of real property passes all easements attached thereto, and creates in favor thereof an easement to use other real property of the person whose estate is transferred, in the same manner and to the same extent as such property was obviously and permanently used by the person whose estate is transferred, for the benefit thereof, at the time when the transfer was agreed upon or completed."

In the early California case of Cave v. Crafts, 53 Cal. 135, the court held:

"When the owner of lands divides his property into two parts, granting away one of them, he is taken by implication to include in his grant all such easements in the remaining part as are necessary for the reasonable enjoyment of the part which he grants, in the form which it assumes at the time he transfers it.   * * *   The purchaser is entitled to the benefit of the easement without any express reservation or grant."

The ditch was constructed for the purpose of attaching it to the land so that the land would be benefited by the irrigation of the water carried in the ditch.

In the case of Tucker v. Jones, 8 Mont. 225, 19 P. 571, 573, the court said:

"Easements or servitudes are either personal or real, as, for instance, when a right of way is

granted in favor of a particular person or persons, the sale of the estate will not carry with it the right which is confined to the persons; but where, by distinction, a right of way attaches to and in favor of a certain house, farm, ranch, or plantation, or a certain right of drainage exists in favor of the farm, or the use of a certain ditch and water for the irrigating of a farm, they will pass by the deed, even without the use of the word 'appurtenances;' for the acquisition of the easement or servitude was intended for the benefit of the estate, and by destination is to be considered as incidental to the use of and as a part and parcel of the realty. As was well said in the case of Cave v. Crafts: 'The word "appurtenances" is not necessary to the conveyance of the easement. The general rule of law is that, where a party grants a thing, he by implication grants whatever is incident to it, and necessary to its beneficial enjoyment. The incident goes with the principal thing. The idea and definition of an easement to real estate granted is a privilege off and beyond the local boundaries of the lands conveyed.' "

It is a well settled rule that where, during the unity of title, an apparently permanent and obvious servitude is imposed on one part of an estate in favor of another part, which servitude, at the time of the serverance, is in use and is reasonably necessary for the fair enjoyment of the other part of the estate, then upon a serverance of the ownership, a grant of the right to continue such use arises by implication of law. 17 Am.Jur., Easements, § 33, page 945, and all the cases therein cited.

The rule is expressed in 1 Thompson on Real Property, Perm.Ed., page 636, § 392, as follows:

"* * * The rule is general that, where an owner conveys part of his land, he impliedly grants all those apparent or visible easements upon the part retained, which were at the time used by the grantor for the benefit of the part conveyed and

which are reasonably necessary for the use of that part."

It is claimed by the plaintiffs that an owner cannot create an easement on his own land. The rule, however, is different where a part of the land is severed and sold. In the case of Cave v. Crafts, supra, the court said:

"* * * No easement exists so long as the unity of possession remains, because the owner of the whole may at any time rearrange the quality of the several servitudes; but upon severance by the sale of a part, the right of the owner to redistribute ceases, and easements or servitudes are created corresponding to the benefits or burden existing at the time of sale."

■ Under the stipulation of facts and the exhibits introduced in evidence, all of the elements essential to create an easement or servitude by implication of law upon the severance of the unity of ownership in an estate are present in this case:

First, separation of the title by sale of different parts of the property over which the irrigation ditch ran by Mrs. Durst to the predecessors of the defendants;

Second, that before the separation or sale took place, the use of the water for irrigation which gave rise to the construction of the ditch had so long continued obvious and manifest as to show that it was meant to be permanent;

Third, the easement or ditch is essential to the beneficial enjoyment of the defendants' land; and

Fourth, the ditch and its use for irrigation purposes has continued uninterrupted since its construction in 1900 by the defendants and their predecessors.

Under the fact situation, as disclosed by the stipulation and the record, the plaintiffs' land is burdened with an easement or servitude in the form of this ditch for the beneficial use of the land belonging to the defendants, and to such an extent that the plaintiffs cannot eleminate or close this ditch as against the defendants, and they are estopped from depriving the defendants of the use of this ditch over their land,

even though it does constitute a burden on the plaintiffs' property.

The judgment of the trial court is reversed, with direction to enter judgment for the defendants.

All the Judges concur.

SEACAT, Circuit Judge, sitting for RENTTO, J., disqualified.