JUSTICE HARRISON,
dissenting.
I dissent. Few cases have come before this Court of more import to the citizens of this State, particularly those who make their living through agriculture, than this case. Without water farms and ranches in this State economically cannot exist. It is my position that under Article IX, Section 3 of the Montana Constitution, pre-1973 water rights are protected from legislative forfeiture. Article IX, Section 3 provides in its entirety:
Water rights. (1) All existing rights to the use of any waters for any useful or beneficial purpose are hereby recognized and confirmed.
(2) The use of all water that is now or may hereafter be appropriated for sale, rent, distribution, or other beneficial use, the right of way over the lands of others for all ditches, drains, flumes, canals, and aqueducts necessarily used in connection therewith, and the sites for reservoirs necessary for collecting and storing water shall be held to be a public use.
(3) All surface, underground, flood, and atmospheric waters within the boundaries of the state are the property of the state for the use of its people and are subject to appropriation for beneficial uses as provided by law.
(4) The legislature shall provide for the administration, control, and regulation of water rights and shall establish a system of *184 centralized records, in addition to the present system of local records.
Appellants contend that subsection (1) provides a guarantee of existing water rights and any statutory scheme that obviates that guarantee is against the public policy of Montana. I agree. The constitution gives the power to the legislature to affirm and preserve existing water rights, but I disagree with the holding of the majority in that it does not give the legislature the power to affirm or extinguish existing water rights.
Here, each of the appellants exercised his or her rights to the evidentiary hearings and each alleged different factual circumstances for having filed late (i.e., improper address on the claim form, lessor’s neglect, and owner’s absence). Evidence was presented by each appellant of a historical and continued use of water for various beneficial uses. The appellants contended that they in no way had “abandoned” their water rights. The court determined that each had filed late under § 85-2-226, MCA, and, therefore, had forfeited his or her claim. Examining the testimony of each of the appellants, I would have found a factual exception and, therefore, would not have declared the law constitutional. I do not find that the constitution delegates the power of forfeiture or extinguishes existing rights, but as I read it, it affirms and attempts to preserve those existing rights. The fact that the legislature is mandated to complete a record of all existing rights does not give the legislature the power to extinguish rights that are implicitly confirmed by our constitution.
DELEGATE DAVIS:... The whole purpose, just for the purpose of the journal, is to establish, in the first sentence, that all existing water rights are recognized and confirmed — so no one will get any idea that we’re trying to take away any vested or existing rights. ... [Emphasis added.]
Verbatim Transcript, Montana Constitutional Convention, Vol. V, p. 1302 (1971-1972).
Here, the appellants argue that public policy of protecting existing rights by preserving the present and existing system of local control is further supported by the constitutional mandate of Article IX, Section 3(4), which establishes the centralized system “in addition to the present system...”
Two cases of this Court since the 1972 Constitutional Convention: General Agric. Corp. v. Moore (1975), 166 Mont. 510, 534 P.2d 859, and McDonald v. State (1986), 220 Mont. 519, 722 P.2d 598, are cases, which, in my opinion, reaffirm the public policy of our constitution *185 that confirms all water rights acquired under the 1889 constitution. Therefore, I would find that the legislature has acted unconstitutionally by enacting and adjudicating a procedure that abolishes a right granted by the Montana Constitution. Also, I would hold that any legislative act that operated to extinguish the pre-1973 water rights that had been confirmed by the 1972 constitution is contrary to the intent of the framers and, therefore, against public policy.
In addition, the appellants argue, and I agree, that abandonment, as historically defined by this Court, has always required at least a showing of non-use. See Tucker v. Jones (1888), 8 Mont. 225, 19 P. 571; 79 Ranch, Inc. v. Pitsch (1983), 204 Mont. 426, 666 P.2d 215. In those cases it is argued that the failures of those plaintiffs to file was related to various mistakes that had nothing to do with non-use. Here, the appellants have maintained continuous and beneficial use of their water rights. Failing to timely file does not imply that appellants have ceased to beneficially use their water rights. The majority adopted a presumption of abandonment for failure to timely file; this presumption is neither necessary nor true in fact, and for that reason § 85-2-226, MCA, is constitutionally infirm.
In the instant case, the respondents contend that the Water Corut’s characterization of § 85-2-226, MCA, as a forfeiture statute, is accurate and fully supported by the United States Supreme Court. United States v. Locke (1985), 471 U.S. 84, 105 S.Ct. 1785, 85 L.Ed.2d 64; Texaco, Inc. v. Short (1982), 454 U.S. 516, 102 S.Ct. 781, 70 L.Ed.2d 738.1 cannot agree with the respondents’ assertion that both Locke and Texaco, Inc. refute the appellants’ argument that an irrebuttable presumption exists in § 85-2-226,.
Locke involves the constitutionality of § 314(c) of the Federal Land Policy and Management Act of 1976, 43 U.S.C. § 1744(c), which requires holders of mining claims to file, prior to December 31st of each year, a notice of intention to continue holding the mining claim. In Locke, Locke filed a notice one day past the deadline and his claim was deemed “abandoned.” Locke challenged the constitutionality of the law on several grounds, including that the statute created an irrebuttable presumption which violated due process. Section 314 of FLPMA provides: “[Fjailure to file such instruments as required ... shall be deemed conclusively to constitute an abandonment of the mining claim.” Locke argued that the failure to timely file a claim should not extinguish the claim, but merely shift the burden to the claimant to prove the claim was not abandoned. There the Supreme Court held, “[ajlthough § 314(c) is couched in terms of a conclusive *186 presumption of‘abandonment,’ there can be little doubt that Congress intended § 314(c) to cause a forfeiture of all claims for which the filing requirements ... had not been met.” Locke, 471 U.S. at 98, 105 S.Ct. at 1794, 85 L.Ed.2d at 78.
In my opinion, the Locke decision is distinguishable and, therefore, not controlling. First, the appellants in their arguments, distinguish the purposes of FLPMA and Montana’s Water Use Act. The purpose of FLPMA as articulated in Locke is allegedly to rid the federal lands of stale claims and to extinguish unused interest. In this case, to the contrary, the purpose of Montana law is to recognize and confirm all existing water rights. Second, the interests subject to the federal statute are not constitutionally recognized and confirmed as are the Montana interests. Third, the Montana statute allegedly fails to further the purpose of the Water Use Act and is, therefore, against the interest and the welfare of Montana’s citizens. Section 314(c) allegedly complies with the goals of FLPMA and furthers the interest being pursued. Fourth, § 85-2-226, MCA, operates in judicial proceedings while the federal statute does not. Fifth, the federal statute was characterized as a forfeiture statute which the appellants contend our Montana statute is not.
In addition, the interest of the federal government recognized in Locke and the interest in Montana with regard to water rights, it is argued, are similar. The majority concludes that § 314(c) and § 85-2-226, MCA, are nearly identical and that the Supreme Court’s analysis should be controlling. In Locke, the Supreme Court delineated a three-point test to determine when the forfeiture statute passes constitutional muster. Two parts of the test address substantive and procedural due process. The third part of the test asks the question whether the legislature has the power to mandate that rights be terminated if the holders do not take affirmative action required by the legislature. In other words, part three asks if § 85-2-226, MCA, is a lawful exercise of the State’s police power.
I would hold that the statute does not satisfy the applicable constitutional test determined by Locke, and I would note there is a considerable difference between an unpatented mining claim and a water right that has been historically recognized by this Court prior to the majority’s opinion.
I would, therefore, reverse and remand this matter to the Water Court for further hearings on the fact situations presented by the appellants.