John F. KEALY and Robert M. Snell, Doing Business as Partners under the partnership name of Mid-Plains Development Company, Appellants,

v.

Roger L. HARTER, Appellee.

No. 81–2404.

United States Court of Appeals, Eighth Circuit.

Submitted June 15, 1982.

Decided July 6, 1982.

---

Whelan, Foote & Scherr, P. C., Gene C. Foote, II, Stephen A. Scherr, Dale A. Norris, Hastings, Neb., for appellants.

Before LAY, Chief Judge, FAIRCHILD,* Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

PER CURIAM.

This case involves a determination of whether a provision in a contract for the sale of land provides for liquidated damages or creates an illegal penalty. The district court found that the provision created a penalty and refused to enforce it. John Kealy and Robert Snell appeal, arguing the district court misconstrued Nebraska law as well as one of the stipulated facts.

Kealy and Snell brought an action in federal district court to enforce two promissory notes executed by Roger Harter in the amount of $15,000 and $50,000. The parties stipulated to the following facts. Kealy and Snell are partners in Mid-Plains Development Co. On February 20, 1980, Mid-Plains contracted to sell the Van Dorn Plaza Shopping Center in Lincoln, Nebraska, for $4,200,000 to Harter, Inc., a corporation owned and controlled by Roger Harter. Section 2 of the contract provided that Harter, Inc. should execute a bank draft for $25,000 as "earnest money" to be applied to the purchase price on the closing date.

On April 28, 1980, the parties orally agreed to delay the closing date until May 19, 1980. Harter, Inc. agreed to pay $250 per day as an extension fee. A written agreement on May 19 postponed closing until June 19. Another agreement on May 19 provided that the bank draft would be delivered on or before June 19. On June 15, Roger Harter executed and tendered to Kealy and Snell the notes at issue in this case. On June 19, the parties, by written agreement, postponed the closing date to June 30. The June 19 agreement labels the notes "liquidated damages."

The parties agreed to another delay on June 30. They agreed that closing would occur when Harter paid $500,000 and that he would have 24 hours to make such payment after he received written notice of Mid-Plains' termination of the agreement. On July 1, Mid-Plains demanded payment and gave notice of termination. Harter did not tender payment.

Harter never made payment under the promissory notes. Harter did pay $250 per day from April 25 to July 21, 1980.

While these transactions were occurring, on June 3, 1980, Mid-Plains executed a real estate purchase agreement for the sale of the Van Dorn Plaza to Bernie and Bonnie Goler and Ben and Francine Wixen. On August 19, 1980, the Plaza was sold according to this contract.

On November 12, 1980, Kealy and Snell filed a complaint in federal district court demanding payment on two promissory notes executed by Harter in the amount of $50,000 and $15,000. Harter asserted several affirmative defenses. The parties stipulated the facts. On October 20, 1981, Chief Judge Warren K. Urbom held for Harter, finding the agreement to execute the notes created an unenforceable penalty rather than providing for liquidated damages. Kealy and Snell appeal, challenging the district court's conclusion of law and construction of the facts.

█ The parties agree that a contractual provision providing for liquidated damages is enforceable while a provision creating a penalty for nonperformance is invalid. The determinative question in this case is whether the notes represent liquidated damages or a penalty. In distinguishing these two types of provisions, the district

* Thomas E. Fairchild, Senior Circuit Judge, United States Court of Appeals for the Seventh Circuit, sitting by designation.

court cited the test stated in *Growney v. C M H Real Estate Co.*, 195 Neb. 398, 399, 238 N.W.2d 240 (1976):

> As a general rule: "The question of whether a stipulated sum is for a penalty or for liquidated damages is answered by the application of one or more aspects of the following rule: a stipulated sum is for liquidated damages only (1) where the damages which the parties might reasonably anticipate are difficult to ascertain because of their indefiniteness or uncertainty and (2) where the amount stipulated is either a reasonable estimate of the damages which would probably be caused by a breach or is reasonably proportionate to the damages which have actually been caused by the breach." 22 Am. Jur.2d, Damages, s. 214, p. 299. See, also, *Abel Constr. Co. v. School Dist. of Seward*, 188 Neb. 166, 195 N.W.2d 744.

*Id.* at 242–43.

*Cf.* Restatement (Second) of Contracts § 356 (1981); S. Williston, A Treatise on the Law of Contracts §§ 783, 784, at 719–33 (W. Jaeger 3d ed. 1961); A. Corbin, Corbin on Contracts §§ 1058–1060, at 337–53 (1964). The district court found that the promissory notes represented a penalty under the *Growney* test because the execution of a contract on June 3 to sell the property to third parties rendered the damages from breach of the original contract ascertainable. This is a factual conclusion which we cannot overturn unless we find it clearly erroneous.[1]

The contract to sell the property to the third parties was executed on June 3, two weeks before the June 19 agreement labeling notes executed on June 15 "liquidated damages." Kealy and Snell argue the second contract did not render all the potential damages ascertainable. They assert that the district court did not find the damages were "absolutely ascertainable." But damages are never certain and Nebraska courts merely inquire whether the parties can "reasonably anticipate" the damages.

■ Kealy and Snell also assert that there is a difference between a contract to sell and actual sale. They assert there may be delay between execution of a contract and closing and that a buyer may fail to perform. We need not determine whether damages created by these variables would be chargeable to the original buyer because we believe a degree of contingency, particularly in relation to collateral sources of damage, does not necessarily render damages indefinite.

The district court also concluded that the notes represented a penalty under the second prong of the *Growney* test. The court found that, at the time the notes were executed, Kealy and Snell knew they would suffer only minimal damage. Thus the amount of the notes was not a reasonable estimate of the potential damages.[2] The court also stated that Kealy and Snell offered no proof that they had, in fact, suffered any damage.[3]

Kealy and Snell also challenge the district court's construction of paragraph 14 of the stipulated facts. Paragraph 14 reads in part, "On June 3, 1980, the Plaintiff executed a Real Estate Purchase Agreement for the sale of said property to Bernie Goler and Bonnie Goler, husband and wife, and Ben Wixen and Francine Wixen, husband and wife." Kealy and Snell allege that the executed contract was dated June 3 because it was drafted on that date, but, they as-

---

1. Although plaintiffs cite a number of authorities to illustrate the general trend away from disfavoring provision for liquidated damages, they cite no Nebraska case reversing the rule articulated in *Sunderland Bros. Co. v. Chicago, B. & Q. R.*, 104 Neb. 319, 179 N.W. 546, 546 (1920), that if construction is doubtful, a provision will be considered a penalty.

2. Courts and commentators have construed the reasonable estimation criteria to require that the parties make a good faith attempt to predict damages. *Sun Printing & Publishing Ass'n v. Moore*, 183 U.S. 642, 662, 22 S.Ct. 240, 248, 46 L.Ed. 366 (1902); S. Williston, A Treatise on the Law of Contracts § 778, at 693–95 (W. Jaeger 3d ed. 1961); A. Corbin, Corbin on Contracts § 1059, at 345 (1964).

3. We note that Harter paid $250 per day from April 25, 1980 to July 21, 1980 as an extension fee.

sert, the contract was not executed until after the liquidated damage clause was inserted in the original contract.

 The stipulation of facts clearly states that the contract was executed on June 3.[4] By contrast, the stipulation clearly differentiates between offer and execution of the contract in describing the agreement between Harter and Kealy and Snell. Voluntary stipulations of fact are conclusive and can be controverted on appeal only under exceptional circumstances. *Fenix v. Finch*, 436 F.2d 831, 837 (8th Cir. 1971); *Hoffman v. Celebrezze*, 405 F.2d 833, 836 (8th Cir. 1969). The stipulation of facts in this case was only four pages long. Kealy and Snell do not explain why they agreed to paragraph 14 if it is inaccurate. We thus find no extraordinary circumstances or excuse of any kind. We find the district court's reliance on the stipulation was appropriate.

We affirm the judgment of the district court.

---

**4.** We are not told whether the contract executed with the Golers and Wixens on June 3 was contingent on breach by Harter, Inc. If it was contingent, there was no inconsistency in the two contracts being outstanding at the same time.