**Sally L. BECKER, Personal Representative of the Estate of Fred E. Lowe, Deceased, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. CV. 88–0–816.**

United States District Court, D. Nebraska.

June 6, 1990.

David A. Domina, Domina, Gerrard, Copple & Stratton, P.C., Norfolk, Neb., for plaintiff.

Ronald D. Lahners, U.S. Atty., Daniel A. Morris, Asst. U.S. Atty., Loren B. Mark, Trial Atty. Tax Div., U.S. Dept. of Justice, CTS, Western Region, Washington, D.C., for defendant.

## ORDER

STROM, Chief Judge.

 This matter is before the Court on plaintiff's objections (Filing No. 43) to the report and recommendation of the magistrate (Filing No. 42). Pursuant to 28 U.S.C. § 636, this Court has conducted a *de novo* review of those portions of the magistrate's report and recommendation to which objection has been made. The Court has reviewed the findings and recommendations of the magistrate, as well as the positions of the parties, and finds that the report and recommendation of the magistrate should be adopted.

The parties stipulated that the value of the land for purposes of this litigation is $130 per acre (Filing No. 29). The magistrate has thoroughly addressed this issue, and this Court concurs in his analysis and conclusion. Even if the issue of the impact of deferred tax liability had been referenced in the stipulation, the Court agrees with the Magistrate's analysis that the deferred income tax liability that Lowe Cattle Company, Inc., might incur if it sold the property in question is not a valid factor to consider in determining the value of the property for gift tax purposes. Accordingly,

IT IS ORDERED that the report and recommendation of the magistrate is adopted in its entirety; defendant's motion for partial summary judgment is granted; an adjustment for deferred taxes will not be considered with regard to fair market value of the ranch land at issue.

## REPORT AND RECOMMENDATION

DAVID L. PIESTER, United States Magistrate.

Pending before the court is defendant's motion for partial summary judgment, filing # 30. This is an action for the return of federal gift taxes paid by the plaintiff as a result of a deficiency assessed by the Internal Revenue Service against the decedent's estate. The defendant has filed for partial summary judgment on the narrow issue of the fair market value of approximately 24,283 acres of ranch land which was transferred by the decedent to a family corporation known as the Lowe Cattle Company, Inc.

Under Rule 56 of the Federal Rules of Civil Procedure the purpose of a motion for summary judgment is to determine whether a "genuine issue of material fact" exists. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). All inferences of fact must be drawn against the moving party, who carries the burden of showing that no issue of material fact exists and that it is entitled to judgment as a matter of law. *See, e.g., AgriStor Leasing v. Farrow,* 826 F.2d 732, 734 (8th Cir.1987); *Holloway v. Lockhart,* 813 F.2d 874, 878 (8th Cir.1987). Rule 56(c) mandates that summary judgment be granted when the non-moving party fails to make a sufficient showing on an element on which that party bears the burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In *Celotex Corp.* the Supreme Court stated:

> [W]here the non-moving party will bear the burden of proof at trial on a dispositive issue ... Rule 56(e) ... requires the non-moving party to go beyond the pleadings and by [its] own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The Court further noted that:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of

law" because the non-moving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof. *Id.*

In passing upon a motion for summary judgment, the court is required to view the facts in the light most favorable to the non-moving party and to give that party the benefit of all reasonable inferences to be drawn from the underlying facts disclosed in the pleadings and affidavits. *Economy Housing Co. v. Continental Forest Products, Inc.*, 757 F.2d 200, 203 (8th Cir.1985) (citing *Vette Co. v. Aetna Casualty & Surety Co.*, 612 F.2d 1076, 1077 (8th Cir.1980)).

On May 16, 1980 the decedent, Fred E. Lowe, transferred 24,283 acres of ranch land and ninety shares of Lowe Cattle Company capital stock to the Lowe Cattle Company, Inc. in exchange for 17,797 shares of Lowe Cattle Company preferred stock and $400,000 in debenture notes. The Internal Revenue Service, pursuant to 26 U.S.C. § 2512(b), assessed against that transfer the gift tax at issue herein. Section 2512 of the Internal Revenue Code provides as follows:

Valuation of Gifts

(a) If the gift is made in property, the value thereof at the date of the gift shall be considered the amount of the gift.

(b) Where the property is transferred for less than an adequate and full consideration in money or money's worth, then the amount by which the value of the property exceeded the value of the consideration shall be deemed a gift, and shall be included in computing the amount of gifts made during the calendar year.

For purposes of gift tax assessment, the decedent and his advisors determined that decedent's receipt of the stock and debentures was "full market value consideration" for the transfer of the land and the capital stock which negated any finding that a "taxable gift" had been made by the decedent. However, the Internal Revenue Service, using alternative valuation assessments, concluded that the transfer had been made for less than adequate and full consideration, thus resulting in a determination that a taxable gift had been made and a deficiency was due.[1]

The central issue in the plaintiff's action is whether the transfer of property referred to above resulted in a "taxable gift" for which the decedent's estate would owe federal gift tax. Disposition of that issue requires a determination as to subissues on the value to be assigned certain property which was the subject of the transfer in question. One of those subissues, the value of the ranch land, is the subject of the defendant's motion for summary judgment.

The defendant maintained that the land in question had a fair market value of $140.00 per acre. The plaintiff, however, valued the land at $120.00 per acre. For purposes of this litigation the parties entered into a stipulated compromise in which they agreed that the fair market value of the land in May 1980, the time of the transfer, was $130.00 per acre. (See filing # 29). On the basis of that stipulation the defendant asserts that there is no genuine issue of material fact as to the value of the

---

1. The I.R.S. determined that the fair market value of the property transferred by the decedent to Lowe Cattle Company was a total of $3,503,900.00 ($98,100.00 for the ninety shares of stock and $3,405,800.00 for the 24,327 acres of land at $140.00 per acre). Further, it was determined that the fair market value of the property received by the decedent in exchange was $2,151,511.00 ($1,779,700.00 for the 17,797 shares of preferred stock and $371,811.00 for the debenture notes). Thus, based on 26 U.S.C. § 2512(b) the I.R.S. concluded:

The value of the gift is the difference between the fair market value of the property transferred, $3,503,900.00 and the fair market value of the property received $2,151,511.00. Accordingly, the value of the taxable gifts is increased $1,352,389.00.

(Filing # 1, Exhibit # 1, p. 4). I note, in reference to the language that the value of the taxable gifts "is increased," the tax return as filed on behalf of the decedent apparently indicated "–0–" as the amount of taxable gifts claimed.

The plaintiff disputes all of the values assigned by the I.R.S., apparently with the exception of the value assigned to the ninety shares of capital stock given to the corporation. In any event, it is the plaintiff's contention that the value of the consideration received by the decedent, alleged to be $2,081,600.00, was greater than the value of the land plus the stock transferred to the corporation.

ranch land, and, therefore, it is entitled to judgment as a matter of law on that issue.

The plaintiff, on the other hand, asserts that the stipulated land value "was made without prejudice to the claims of the taxpayer that the value should be further reduced because of the peculiar [tax] circumstances of the land." (Brief of plaintiff at p. 1). Specifically, the plaintiff has asserted in its complaint and brief in opposition to the defendant's motion that the fair market value of the land must be further reduced due to a "deferred income tax of $832,360.00" which would be due if the corporation were to sell the land.

I first note that the plaintiff has cited no cases in support of the above stated argument. Further, plaintiff does not explain why the stipulation as signed by plaintiff's counsel did not include the asserted reservation of rights on the "deferred tax" issue. While the letter correspondence leading up to the stipulation clearly states that the agreed price of $130.00 per acre would not affect the plaintiff's ability to raise the issue of further reduction due to the "deferred income tax," such a reservation of rights was not included in the signed stipulation. Generally stipulations of fact are conclusive and will be binding except in cases involving exceptional circumstances. *Kealy v. Harter*, 682 F.2d 198 (8th Cir. 1982).

■ Even assuming that the plaintiff is not bound by the plain language of the stipulation, I cannot conclude that the agreed-upon value of the ranch land should be further reduced by the "deferred income tax" liability on the land. In a tax refund action such as this, the plaintiff bears the burden of proving that the I.R.S. overvalued the property which is the subject of the tax. *Wallace v. U.S.*, 566 F.Supp. 904 (D.C.Mass.1981); *Carpenter v. U.S.*, 7 Cl.Ct. 732, *aff'd*, 790 F.2d 91 (1985) (method of valuation is presumed correct). As noted above the plaintiff has provided no court decisions in support of her argument, and points only to the deposition testimony of the decedent's estate planning counsel as support for her theory that the land value

in question must be reduced by any "deferred tax liability" on that land.

The meaning or source of the "deferred tax liability" referred to by plaintiff is not explained. It appears, based on the complaint (Filing # 1, ¶ 12), the deposition testimony of Albert Reddish (24:1–19) and one reference from plaintiff's brief (Brief of Plaintiff in Opposition to the Motion for Partial Summary Judgment at p. 7), that the "tax" which has been deferred is income tax, and, as the argument is set forth, the party who bears the "deferred tax" liability is the corporate entity, Lowe Cattle Company. Other than that, the plaintiff offers no insight into the basis of this "deferred tax."

Two factors seem to be at the root of plaintiff's theory that the land value should be reduced by the "deferred tax" liability on the corporation. First, it is alleged that the land itself has a reduced market value due to the "deferred tax," and, alternatively, it is alleged that as an asset of the corporation the land's adverse "tax basis" reduces the fair market value of the corporation's stock (which according to the plaintiff was the real gift in this case). Under either theory, however, the plaintiff's argument ignores the dispositive factor in this case. No matter how the plaintiff frames her argument it is still based on the premise that any future sale of land or stock by *the corporation* would result in a discounted value being attributed to either the land or stock because of the "deferred income tax liability" on the ranch land as an asset. Even assuming this is true, however, the reduced value to the corporation is irrelevant in its valuation for gift tax purposes.

■ For purposes of gift tax computation, the value of the property gifted will be determined at the time of transfer from the donor; it is not measured by the enrichment to the donees of the transfer. *W. Arthur Cullman*, ¶ 81,666 P–H Memo TC (1981). Section 25.2511–2(a) of the Gift Tax Regulations provides:

(a) The gift tax is not imposed upon the receipt of the property by the donee, nor is it necessarily determined by the measure of enrichment resulting to the donee

831

from the transfer, nor is it conditioned upon ability to identify the donee at the time of the transfer. On the contrary, the tax is a primary and personal liability of the donor, is an excise upon his act of making the transfer, *is measured by the value of the property passing from the donor*, and attaches regardless of the fact that the identity of the donee may not then be known or ascertainable.

26 C.F.R. 25.2511–2(a) (Emphasis added). Section 25.2512–1 further provides, "[I]f a gift is made of property, its value *at the date of the gift* shall be considered the amount of the gift." (Emphasis added).

In *Citizens Bank & Trust Co. v. C.I.R.*, 839 F.2d 1249 (7th Cir.1988) the court held that while pre-transfer restrictions on marketability of property will reduce its value for purposes of either estate or gift tax (e.g. a donor painting a mustache on his Mona Lisa painting before transferring it to his child as a valid reduction of its value for gift tax purposes), such restrictions which *result from* the transfer itself will not serve as a means of reducing the value of that same property. In *Citizens Bank* four siblings, each owning 25% of both voting and nonvoting stock in a closely held family corporation, established identical trusts, which were to become irrevocable after 20 days or upon death, in an effort to insure future family ownership and control of the enterprise. At the moment the trusts became irrevocable, either automatically after 20 days or upon death, the grantees became liable for the payment of either federal gift or estate tax. Upon the occurrence of those events (the death of one sibling and twenty days passing as to the other trusts) gift and estate taxes became due, and the issue of the valuation of the stock for purposes of tax liability arose. The taxpayers argued that the value of the stock should be discounted as much as 90% of fair market value (a "marketability" discount) because of the severe restrictions placed on the stock once the trusts became irrevocable. On the other hand, the government asserted that "the value of the stock transferred to the trusts must be determined without regard to the terms or indeed existence of the trusts." *Id.* at 1250.

The government relied on a line of cases which have held, in essence:

[V]alue is to be measured at the instant before transfer, so that the amount of tax depends on the value of the transferred property in the hands of the transferor rather than its value in the hands of the transferee. *Estate of Curry v. United States*, 706 F.2d 1424, 1426–30 (7th Cir.1983); *Ahmanson Foundation v. United States*, 674 F.2d 761, 767–69 (9th Cir.1981); cf. *Ithaca Trust Co. v. United States*, 279 U.S. 151, 155, 49 S.Ct. 291, 73 L.Ed. 647 (1929),; *YMCA v. Davis*, 264 U.S. 47, 50, 44 S.Ct. 291, 292, 68 L.Ed. 558 (1924).

*Id.* at 1251. Accepting the government's position, the court held that valuation without consideration of restrictions imposed by the trust was necessary to prevent "facile avoidance of gift or estate tax," *Id.* at 1252, by inventive grantors who might divide up their estate (parts being less valuable than the whole) in an effort to reduce its value for purposes of taxation. The court further noted Treasury Regulation 25.2511–2(a), which states that gift taxes are an "excise on [the donor's] act of making the transfer," and found its result to be in keeping with legislative intent of taxing an estate or gift as it is valued in the hands of the donor. The court held that when a "reduction in value ... is brought about ... by the transfers," rather than restrictions placed on property *before* transfers, property must be valued as it would be in the hands of the donor without regard to any potential reduced value in the hands of the donees. *Id.* at 1255.

Based on the foregoing, I must conclude that plaintiff's position on this issue is without merit. The value of the property subject to gift tax cannot be measured by its value to either the corporation as a recipient of the land nor its value to the donee's daughter and son-in-law as stockholders in the corporation, and especially cannot be measured on the basis of what might happen *if* the corporation ever sells that land. The only applicable test, "the

willing buyer and willing seller, neither being under any compulsion to buy or sell," *see*, Treasury Regulation 25.2512–1,[2] must be applied as if the sale were taking place between a "hypothetical" seller and a "hypothetical" buyer, rather than the actual parties, *Citizens Bank, supra,* at 1253, and be based on a value that would be paid without regard to any impediments or restrictions on the property after it is transferred. The "deferred tax liability" referred to herein by the plaintiff is a restriction on value which occurred, as described by the plaintiff, because of the transfer of the land to the corporation; it was not a restriction which existed as the land was in the hands of the donor.

IT THEREFORE HEREBY IS RECOMMENDED, to the Honorable Warren K. Urbom, District Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), that the defendant's motion for partial summary judgment be granted.

The plaintiff is hereby notified that unless objection is made within ten days after being served with a copy of this recommendation, she may be held to have waived any right she may have to appeal the court's order adopting this recommendation.

---

**2.** Both parties agree that the willing buyer, willing seller test applies to this case; the only dispute is what party to cast in those roles.